

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00132-CR

CHRISTOPHER DOUGLAS SIMMONS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1294037D, Honorable Sharen Wilson, Presiding

May 2, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Christopher Douglas Simmons, appeals the trial court's judgment pronouncing him guilty of four violations of civil commitment requirements for sexually violent predators.[1]  As to each violation, appellant was sentenced to seven years' imprisonment, the four sentences to run concurrently.  On appeal, he challenges the sufficiency of the evidence to support his convictions.  We will affirm.

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 841.085 (West 2010).

Factual and Procedural History

By judgment signed on August 19, 2009, by the 435th Judicial District Court of Montgomery County, Texas, appellant was adjudicated a sexually violent predator and was civilly committed upon his release from the Texas Department of Criminal Justice (TDCJ) for one or more sexually-based offenses.[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003 (West Supp. 2013).

When appellant was released from TDCJ in January 2012 and pursuant to the order of civil commitment, he was sent to live at the Avalon Fort Worth Transitional Center, a halfway house, where he was assigned custodial duties at the facility.[3] Case manager, Clemmy Washington, of the Office of Violent Sex Offender Management (OVSOM), set up an initial meeting with appellant in which Washington explained all the behavior and supervision requirements and conditions by which appellant must abide while living at the facility. *See id.* § 841.082(a) (West Supp. 2013) (outlining the "requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community," including the person's "compliance with all written requirements imposed by the case manager or otherwise by the [OVSOM]"). Appellant was given a copy of the requirements, indicated to Washington that he understood those requirements, agreed to abide by them while he was a resident of the

_____

[2] The precise sexual offense or offenses for which appellant was convicted and imprisoned is not clear from the record before us. We do know that the Beaumont Court of Appeals affirmed the trial court's final judgment and order of civil commitment signed August 19, 2009. *See In re Commitment of Simmons*, No. 09-09-00478-CV, 2011 Tex. App. LEXIS 4500 (Tex. App.—Beaumont June 16, 2011, no pet.) (mem. op.).

[3] It appears that the formal name of the facility owned and operated by Avalon Correctional Services, Inc. is the "Fort Worth Transitional Center." However, throughout the record, the facility is referred to more informally as "the Avalon house" or "the Avalon halfway house" by both its residents and its staff. For convenience, we will refer to the facility likewise as "the Avalon house" throughout this opinion.

Avalon house, and signed and dated a copy of them, a copy of which is included in the record.

Of the several requirements applicable to appellant as a resident of the Avalon house was Condition 11, prohibiting appellant from engaging in "deviant masturbation" as that term is defined by those conditions. Appellant was also subject to Condition 29, prohibiting him from exposing himself to someone with whom he was "not in a committed, consenting, monogamous sexual relationship." Appellant further agreed to refrain from "communicat[ing] with others in a manner which could be considered obscene, threatening[,] or harassing."

Following a fellow resident's report, the details of which will be provided later in the opinion, that appellant had engaged in behavior which violated the conditions to which he was subject, appellant was arrested and charged with violating the conditions and requirements of his civil commitment as a sexually violent offender. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.085. The State proceeded on eight separate counts within the indictment that pertained to allegations that the appellant had exposed his genitals or had masturbated in front of a fellow resident of the Avalon house. Appellant waived a jury trial. After hearing the evidence, the trial court found appellant guilty of Paragraphs 1 and 3 of Count II and Paragraphs 1 and 3 of Count III and sentenced appellant to seven years' incarceration as to each offense, again, those sentences running concurrently.

On appeal, appellant presents to this Court one issue, that one issue concerning the sufficiency of the evidence to support the trial court's conclusion that he was guilty

of the four violations. More specifically, he challenges the sufficiency of the evidence on the basis of the credibility of the State's primary witness, calling it "so rife with inconsistencies so as to be completely lacking in credibility or reliability." The remainder of his position is as follows:

> The Trial Court's finding of guilt was based solely on her testimony, even though the evidence presented showed clearly that she was lying about her whereabouts as to the first alleged incident of indecent exposure. Logic suggests that if she lied about the first incident, (and the record shows overwhelmingly that she did in fact lie), she cannot be afforded any credibility as to the second allegation. The Trial Court should[,] therefore[,] have found the Appellant not guilty as to all counts.

After reviewing the record in the requisite light, we will affirm the trial court's judgment of conviction.

## Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate

4

question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

Applicable Law

"A person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under [Chapter 841], the person violates a civil commitment requirement imposed under Section 841.082." TEX. HEALTH & SAFETY CODE ANN. § 841.085. Section 841.082 requires, *inter alia*, "the person's participation in and compliance with a specific course of treatment provided by the office and compliance with all written requirements imposed by the case manager or otherwise by the [OVSOM]." *See id.* § 841.082(a)(4). Appellant does not challenge a particular element of the offense for which he was convicted. Instead, he maintains that a State's witness was so unreliable and so incredible as a witness that the trial court could not have reasonably concluded, on her testimony, that appellant engaged in the behavior alleged.

We begin with the well-established principle that an appellate court will not position itself as a thirteenth juror to disregard, realign, or reweigh the evidence. See *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) (en banc). It is equally well-established that resolution of conflicts and inconsistencies in the evidence is the

5

province of the trier of fact. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (op. on reh'g); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979). Such conflicts will not call for reversal so long as there is enough credible testimony to support the conviction. *Bowden*, 628 S.W.2d at 784. Because resolution of conflicts or inferences therefrom lies within the exclusive province of the fact-finder, it may choose to believe all, none, or some of the evidence presented to it. *See Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995) (en banc); *Bowden*, 628 S.W.2d at 784. "The trial judge, when sitting as the sole trier of facts, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995) (en banc)

## Analysis

With those principles in mind, we examine the testimony and the other evidence presented to the trial court.

Lisa Knight, a felony DWI parolee and fellow resident of the Avalon house, testified that on July 17, 2012, at approximately ten or eleven o'clock in the morning, she was at the women's telephone booth in the administrative section of the house when appellant approached her, exposed his genitals, and declared that he liked to rape women. She had never spoken with appellant and knew him only as the person assigned custodial duties around the facility; she had no relationship, sexual or otherwise, with appellant and did not consent to his behavior. Knight explained that she was "very offended" by appellant's conduct and statement but did not report it that day.

Approximately one month later, in the early morning hours of August 17, 2012, Knight again saw appellant as she sat in the female smoking area outside the chow hall and as appellant stood in or very near one of the three doorways into the chow hall, approximately thirty to forty feet from her, she estimated.[4] She testified that appellant was masturbating as he exposed himself to her and her roommate and made eye contact with her, behavior which Knight considered obscene and harassing. She left the smoking area, returned to her room, and, shortly thereafter, reported the incident.

Tanya McElrath, assistant administrator with Avalon Correctional Services who worked at the Avalon facility in Fort Worth, conceded that appellant would have been permitted to be in more places at less restricted times than most other residents as a consequence of his custodial and maintenance duties at the facility. Specifically, she testified that appellant would sometimes remain in the chow hall after meal time hours for the purpose of cleaning up. So, it appears the several gender, time, and location restrictions in place at the Avalon house were relaxed for appellant so that he could fulfill his assigned duties.

Eric Ramon, a client monitor supervisor at the Avalon facility since 2009, testified that he spoke with appellant nearly every day and that appellant helped Ramon on a regular basis with the duties associated with setting up the chow hall for meals. He testified that, on the morning at issue, he spoke with appellant. Appellant asked him whether he had seen Knight around; Ramon responded that he had not.

---

[4] Though there is a significant amount of testimony detailing the location of the female smoking area in relation to the chow hall, the layout of and the relationship between the two areas remain somewhat unclear from the record other than it having been clarified that the designated smoking area for females was *not* inside the confines of the chow hall. It appears that, when Knight was at the smoking area, she was outside and, perhaps, one level above the chow hall doorway in which appellant exposed himself and masturbated in front of her.

In his challenge to the consistency and credibility of Knight's testimony, appellant emphasizes that, according to the Avalon house records, Knight was not at the Avalon house when the incident in July allegedly occurred and also points out that she waited about thirty days to report the first encounter with appellant. Indeed, according to the sign-in/sign-out sheets monitored and controlled by Avalon staff, Knight had checked out of the facility at 9:07 on the morning of July 17, 2012, and did not returned until 4:05 that afternoon. At least twice during her testimony, however, Knight admitted that she was not certain about the time; she thought it had been "around that time." Appellant also points out that Knight had left the facility to attend a court hearing at which she testified against another Avalon house resident who had allegedly cursed at and threatened her. On this basis, appellant characterizes Knight as a "somewhat litigious individual." With respect to the delay-in-reporting point, appellant emphasizes that, even though Knight testified that she had been "very offended" by the July incident, she failed to report it until approximately one month later at the same time she reported the second encounter. Knight explained her decision to make a delayed report of the July incident as follows: "Because after talking to some of the other women and finding out that he had done this, which they didn't go forward, I – I just decided on my own I didn't have to be subjected to that."

Appellant also focuses on Knight's own violation of Avalon house rules by her impermissible possession of a cell phone, an offense discovered the very day Knight reported appellant's behavior to the staff. Knight freely admitted her possession of the cell phone both to administrators at the facility the day the phone was discovered and at trial. She explained that there was no confrontation between her and Avalon

management over the phone. She went to the management staff that day and admitted to them that the phone was hers and not her roommate's, as the staff had originally suspected. She testified that she never expected any reward or any relief from her punishment relating to the cell phone as a consequence of her reporting the encounters with appellant. In fact, she testified that she was punished for having had possession of the cell phone, having been "red tagged"—restricted from leaving the facility at all—for "more than three" days.

Appellant also points to Ramon's testimony that, when the male residents of the facility are eating in the chow hall, the female residents are not permitted into the chow hall; female residents should all be back in their rooms when the males are eating in the chow hall. However, Ramon also testified that, when the male residents are finished with their meals, everyone is allowed to move about freely. Ramon also recalled that he spoke to appellant that morning and he had asked about Knight's whereabouts and whether Ramon had seen her. Ramon testified he told appellant he had not seen her that morning. It is not clear at what time appellant asked Ramon about Knight, and Ramon concedes that he may not have seen Knight if she happened to be outside the chow hall in the designated smoking area for females.

While we do recognize that there is evidence which contradicts or undermines Knight's estimated time of the July incident, we note that Knight did concede that she was not certain of the exact time of the incident. We also acknowledge that the trial court, sitting as finder of fact, was charged with resolving conflicts or confusion in the testimony. *See Joseph*, 897 S.W.2d at 376. And, as the State responds, Texas law permits the fact-finder to believe a witness even though a portion or portions of the

9

witness's testimony has been contradicted. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Further, as fact-finder, the trial court was free to choose to believe all, none, or some of the evidence presented to it. *See Heiselbetz*, 906 S.W.2d at 504.

Similarly, there are uncertainties as to some details surrounding the August incident. However, the trial court, sitting as fact-finder, was charged with resolution of conflicting evidence and was free to believe any, all, or none of Knight's testimony. Again, we will not serve as the thirteenth juror to reevaluate the evidence and make the credibility and weight determinations which remain duties belonging solely to the fact-finder. *See Moreno*, 755 S.W.2d at 867. Our review of the record in a light most favorable to the verdict reveals sufficient evidence—albeit not evidence entirely without conflict or confusion—such that the trial court could have reasonably found that appellant was guilty of violating the requirements of his civil commitment as a sexually violent predator. *See Brooks*, 323 S.W.3d at 912.

## Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction. *See* Tex. R. App. P. 43.2(a).

Mackey K. Hancock
Justice

Do not publish.